# EXHIBIT 1

1 | M. Byron Lewis, 002047
Stephen E. Crofton, 007370
2 | **SALMON, LEWIS & WELDON, P.L.C.**
2850 East Camelback Road, Suite 200
3 | Phoenix, Arizona 85016
(602) 801-9060
4 | mbl@slwplc.com
sec@slwplc.com
5 | Attorneys for Plaintiff



**COPY**

FEB - 1 2012

MICHAEL K. JEANES, CLERK
P SANDERS
DEPUTY CLERK

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| SALT RIVER PROJECT AGRICULTURAL IMPROVEMENT AND POWER DISTRICT, a political subdivision of the State of Arizona, | No. CV2012 003572 |
| Plaintiff, | **COMPLAINT** |
| vs. | **(Breach of Contract)** |
| ACE AMERICAN INSURANCE COMPANY, | |
| Defendant. | |

Plaintiff, Salt River Project Agricultural Improvement and Power District, for its Complaint against ACE American Insurance Company, alleges as follows:

1. Plaintiff, Salt River Project Agricultural Improvement and Power District (hereinafter "SRP"), is an agricultural improvement district organized and existing under the laws of the State of Arizona and is a political subdivision of the State of Arizona with its principal place of business in Maricopa County, Arizona.

2. Upon information and belief, Defendant, ACE American Insurance Company (hereinafter "ACE"), is a foreign corporation duly authorized to conduct business in the State of Arizona. ACE caused acts to occur in Maricopa County, Arizona, out of which this action arises.

3. SRP operates the Coronado Generating Station, a coal-fired electric generating station located near St. Johns, Arizona (hereinafter "CGS"). Operation of CGS produces coal combustion residuals which include a residual known as "fly ash", a non-hazardous waste which can be beneficially reused.

4. On or about September 26, 2002, SRP entered into an Amended and Restated Agreement with Mineral Resources Technologies, Inc. for the Sale and Marketing of Fly Ash (hereinafter "Fly Ash Agreement"). A true copy of the Fly Ash Agreement is attached hereto as Exhibit A. In the Fly Ash Agreement, SRP agreed to sell to Mineral Resources Technologies, Inc. (hereinafter "MRT") 100% of the fly ash produced at CGS, and MRT agreed to purchase and market that fly ash and to produce products using the fly ash.

5. MRT is a wholly owned subsidiary of CEMEX Construction Materials, L.P., which in turn is a subsidiary of CEMEX, Inc., which is the parent company of CEMEX Cement, Inc. The CEMEX entities are engaged in the manufacture of cement aggregate. Fly ash is used in the manufacture of cement aggregate.

6. Pursuant to the Fly Ash Agreement, MRT provided the fly ash handling, storage, loading, and management services pertaining to the CGS fly ash purchased from SRP. MRT was granted the right to, and did, design, install, operate and maintain the necessary equipment and structures used in the collection, storage and loading of fly ash at CGS. CEMEX, Inc. contracted with Ruan Trucking Co. (hereinafter "Ruan") for Ruan to transport fly ash from the MRT facility at CGS to various locations in Arizona. MRT operators did all of the loading of the Ruan trucks transporting such fly ash.

7. Pursuant to Section 9 of the Fly Ash Agreement, MRT agreed to provide various insurance coverages for SRP including commercial general liability insurance with a minimum combined single limit of two million dollars ($2,000,000) each occurrence with the policy to include coverage for bodily injury liability, property damage liability, personal injury liability, contractual liability for liability assumed under the Fly Ash Agreement, and broad form property damage coverage. (Exhibit A, Section 9.2, pages 23-24.) Section 9.4 further provided that the policy required by Section 9.2 would be endorsed to include SRP as an additional insured and that the policy shall be primary insurance and that any insurance carried by SRP shall be excess and not contributory insurance. (Exhibit A, Section 9.4, page 24.)

///

8. In Section 10 of the Fly Ash Agreement, MRT agreed to indemnify, defend and hold harmless SRP from and against any and all claims, demands, suits, costs of defense, attorney's fees, witness fees of any type, losses, damages, expenses and liabilities for injury to or death of any person or persons by reason of any failure of MRT to fulfill its obligations under the Fly Ash Agreement or by reason of any negligent act or omission on the part of MRT except for any liability caused by the sole negligence of SRP. (Exhibit A, Section 10, page 25.)

9. In order to fulfill MRT's obligation under the Fly Ash Agreement to provide commercial general liability insurance to SRP, ACE added SRP as an additional insured under an Excess Commercial General Liability Policy issued by ACE, policy number XSL G20304844 (hereinafter "ACE Insurance Policy"), pursuant to which MRT and various other CEMEX entities were listed as Named Insureds. As required by Section 9 of the Fly Ash Agreement, the ACE Insurance Policy provided primary insurance to SRP, limited to the operations of SRP under the Fly Ash Agreement. The ACE Insurance Policy was in effect at all times relevant herein. What has been represented by representatives of ACE as being a true and correct copy of the ACE Insurance Policy is attached hereto as Exhibit B.

10. On or about October 10, 2007, SRP was served with a First Amended Complaint filed by the Estate of Bruce Wayne Hawkins v. CEMEX Cement, Inc., et al, No. CV2007-010148, Maricopa County Superior Court (the "Hawkins Litigation"). The First Amended Complaint alleged that Bruce Wayne Hawkins (hereinafter "Mr. Hawkins") died on June 17, 2006; that the cause of his death was identified as "Interstitial Pulmonary Fibrosis"; that his death was caused by an "Injury at Work"; and that the interstitial pulmonary fibrosis and death resulted from his contact with fly ash product while he was working as a truck driver for Ruan and picking up and transporting loads of fly ash from various facilities including CGS where MRT loaded Ruan trucks with fly ash from MRT's fly ash facilities located at the CGS site.

11. The defendants named in the First Amended Complaint in the Hawkins Litigation included various CEMEX entities and SRP. In the Second and Third Amended Complaints, MRT was named as a defendant.

3

12. Prior to filing the First Amended Complaint naming SRP as a defendant, the Estate of Mr. Hawkins had served a notice of claim upon SRP. By letter dated January 22, 2007 (Exhibit C hereto), SRP tendered the Hawkins claim to CEMEX, Inc. pursuant to the Fly Ash Agreement and as an additional insured under the ACE Insurance Policy. SRP requested that CEMEX and/or its insurance carrier agree to unconditionally defend and indemnify SRP from any liability in connection with the Hawkins claim. Thereafter, on or about December 11, 2008, ACE notified SRP by a letter, a copy of which is attached hereto as Exhibit D, that ACE was denying coverage and defense to SRP on the basis that there was no duty to defend SRP under the ACE Insurance Policy and that the Hawkins claim was excluded from insurance coverage by a pollution exclusion in the ACE Insurance Policy.

13. Mr. Hawkins' alleged exposure to fly ash arose solely out of the fly ash loading and handling activities of MRT. No activity of SRP caused any fly ash affecting Mr. Hawkins to be introduced into the environment.

14. By letter from SRP's defense counsel to ACE dated April 24, 2009, a true and correct copy of which is attached hereto as Exhibit E, SRP re-tendered to ACE a request for defense and indemnity regarding the Hawkins claim. By letter dated August 18, 2009, a true and correct copy of which is attached hereto as Exhibit F, ACE again wrongfully denied coverage for defense and indemnity for SRP on the basis that the ACE Insurance Policy's pollution exclusion excludes coverage for Mr. Hawkins' death allegedly arising out of his exposure to fly ash.

15. ACE has never provided a defense or indemnity to SRP in the Hawkins Litigation. As a result of ACE's wrongful refusal, based on the ACE Insurance Policy's pollution exclusion, to defend and indemnify SRP against the claims made against SRP by the Hawkins Estate, SRP defended itself in the Hawkins Litigation.

16. On June 3, 2011, in response to the wrongful denial by ACE of any insurance coverage for SRP in the Hawkins Litigation, SRP entered into a Release Of All Claims And Settlement Agreement with Cassie Hawkins, individually and as personal representative of the Estate of Mr. Hawkins and on behalf of any wrongful death statutory beneficiaries of the death of Mr. Hawkins (hereinafter "Settlement Agreement") for the sum of seventy-five thousand dollars ($75,000).

1 Pursuant to the Settlement Agreement and a stipulation for dismissal with prejudice, an order was entered by the Maricopa County Superior Court dismissing the Hawkins Litigation against SRP, with prejudice, on July 14, 2011.

17. In defending against the Hawkins Litigation, SRP has incurred and paid, to date, defense costs and attorney's fees totaling at least one hundred forty-one thousand six hundred fifty-seven dollars and ninety-seven cents ($141,697.97), in addition to the settlement payment of $75,000. The attorney's fees and defense costs and the settlement amount were all incurred and paid by SRP as a direct and consequent result of ACE's wrongful failure to defend and indemnify SRP as required by the ACE Insurance Policy.

17. The ACE Insurance Policy is a binding insurance contract between ACE and SRP as an additional insured under the ACE Insurance Policy.

18. The ACE Insurance Policy was in effect at the time of Mr. Hawkins' alleged exposure to fly ash.

19. SRP performed all of its pertinent duties under the Fly Ash Agreement and is entitled to the benefit of the coverage afforded to SRP by the ACE Insurance Policy.

20. Defendant ACE has breached its duty to SRP as an additional insured under the ACE Insurance Policy by refusing to defend and indemnify SRP for the Hawkins Litigation.

21. As a result of the breach by ACE, SRP has suffered damage in the amount of the $75,000 settlement paid by SRP under the Settlement Agreement and in the amount expended by SRP, in the past or the future, as attorney's fees and costs in defending against the Hawkins Litigation.

22. This claim arises out of contract within the meaning of A.R.S. § 12-341.01.

WHEREFORE, SRP prays for judgment against ACE as follows:

A. For the $75,000 that SRP paid in settlement of the wrongful death claims made against SRP by the Estate and beneficiaries of Mr. Hawkins;

B. For all amounts incurred by SRP in attorney's fees and costs in defending the claims against SRP made by the Estate and beneficiaries of Mr. Hawkins;

5

C.  For SRP's costs and reasonable attorney's fees incurred in this present action; and

D.  For any other relief the Court deems just and proper.

DATED this 1st day of February, 2012.

Salmon, Lewis & Weldon, P.L.C.

By _/s/ M. Byron Lewis_

M. Byron Lewis
Stephen E. Crofton
2850 East Camelback Road, Suite 200
Phoenix, Arizona 85016
Attorneys for Plaintiff